IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CAPSTONE OIL & GAS COMPANY, L.P.,**
a Texas limited partnership and
**PARALLEL PETROLEUM CORPORATION,**
a Delaware corporation,

       **Plaintiffs,**

vs.               **CIV. No.:**
                  **Jury Trial Requested**

**MILLER STRATVERT, P.A.** a New Mexico
professional association, and
**J. SCOTT HALL,** individually,

       **Defendants.**

### COMPLAINT FOR BREACH OF CONTRACT, LEGAL MALPRACTICE, NEGLIGENCE, RESPONDEAT SUPERIOR, INDEMNITY, PROMISSORY ESTOPPEL AND PUNITIVE DAMAGES

**COME NOW**, Capstone Oil & Gas Company, L.P. and Parallel Petroleum Corporation, by and through their undersigned counsel, and for their Complaint state:

### PARTIES

1. Plaintiff Capstone Oil & Gas Company, L.P. ("Capstone") is a Texas limited partnership with its principle place of business in Midland, Texas.

2. Plaintiff Parallel Petroleum Corporation **("**Parallel**")** is a Delaware corporation with its principle place of business in Midland, Texas.

3. Defendant Miller Stratvert, P.A. ("Miller Stratvert") is a New Mexico professional association in the business of providing legal services with law offices in Albuquerque, Santa Fe, and Las Cruces, New Mexico.

4. Upon information and belief, Defendant J. Scott Hall ("Hall") is a resident of Santa Fe, New Mexico and an attorney working in the Santa Fe, New Mexico office of Miller Stratvert. At all times material to this Complaint, Hall was a board certified specialist in oil and gas law.

## JURISDICTION & VENUE

5. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

6. The Plaintiffs are citizens of the State of Texas and the State of Delaware and the Defendants are citizens of the State of New Mexico. The matter in controversy exceeds, exclusive of interest and costs, $75,000.00. Therefore, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (1).

7. The Defendants reside in New Mexico, the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district and, therefore, venue is proper in the District of New Mexico pursuant to 28 U.S.C. § 1391 (a)(1) and (2).

## GENERAL ALLEGATIONS

8. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

9. It is customary in the oil and gas industry for independent energy companies to form associations pursuant to contracts wherein the companies agree to share the costs and risks of acquiring oil and gas leases and developing, exploring and producing oil and gas.

10. At all times material to this Complaint, Capstone and Parallel were parties to an Area of Mutual Interest Agreement ("AMI Agreement") dated March 23, 2005, effective November 15, 2004, wherein the parties agreed to acquire and own oil and gas leasehold

interests and to explore for oil and gas for their mutual benefit in portions of Eddy County and Chaves County, New Mexico (the "Contract Area").

11. Pursuant to the AMI Agreement, Parallel had the right to determine the parcels or tracts of land in the Contract Area to be bid by the Plaintiffs at state or federal oil and gas lease sales and the amount of the bids to be submitted. Parallel was also contractually obligated to fund the full amount of the consideration to be paid for the acquisition of any such leasehold interests, including any amounts due and payable to any agent hired by the Plaintiffs to acquire leases in the Contract Area.

12. Pursuant to the AMI Agreement, Capstone was responsible for, *inter alia*, acquiring any oil and gas leasehold interests in the Contract Area that were mutually agreed upon by the Plaintiffs and to handle the submission, directly or through an agent, of any bids on federal or state lands that Parallel instructed Capstone to bid on in the Contract Area.

13. In or about early January 2006, Parallel instructed Capstone to acquire four (4) leases covering four (4) specific tracts of land within the Contract Area at the quarterly Bureau of Land Management ("BLM") competitive oil and gas lease sale to be held in Santa Fe, New Mexico on January 18, 2006. The four (4) tracts totaling approximately 7,865 acres are more particularly described on Exhibit 1.

14. Competition for federal and state oil and gas leases is high. It is customary in the oil and gas industry for parties with a direct interest in the acquisition of specific leases to hire an agent to act on their behalf for the purpose of preserving their anonymity and decreasing disclosure of which companies are interested in any particular area or tract, a fact that Hall knew or should have known of at all material times.

15. Parallel and Capstone agreed that it was in their mutual interests to hire a third party to act as their agent at the BLM sale to acquire the oil and gas leases covering the four (4) tracts described on Exhibit 1.

16. At all times material to this Complaint, Hall held himself out as a specialist in the area of oil and gas law having experience in, and with special knowledge of, the oil and gas industry, including acting as an agent for oil and gas companies in the bidding and acquisition of oil and gas leases at federal and state lease sales.

17. On or about January 12, 2006, Capstone contracted with Hall to act as the agent for the Plaintiffs at the BLM sale to bid and acquire the four (4) oil and gas leases covering the four (4) tracts of land described in Exhibit 1.

18. Capstone contracted with Hall pursuant to, and in furtherance of, the mutual interests of Capstone and Parallel under the AMI Agreement. At all times material to this Complaint, Capstone intended that Parallel would have the full benefits of, and the right to enforce, the agency contract with Hall.

19. At all times material to the Complaint, Hall knew or should have known that he would be acting as an agent for the direct interests of persons or entities other than, or in addition to, Capstone at the BLM sale.

20. Hall never asked Capstone to identify the other parties having a direct interest in Hall's services as an agent, nor did Hall advise Capstone that he could not, or would not, perform such services if Capstone intended that any party other than Capstone would directly benefit from, or pay the consideration for, Hall's services. Hall's only concern was whether he had other clients with a conflicting interest in the acreage that Hall was hired to bid on at the BLM sale.

21.     On or about January 12, 2006, Hall confirmed to Capstone that no conflict existed as to the acreage and that he could perform the services requested.

22.     At all times material to the Complaint, Capstone and Parallel had common interests in Hall's services as their agent at the BLM sale. At no time did Capstone contract with Hall for professional legal services or advice on behalf of either Capstone or Parallel that could potentially create conflicts of interest or loyalties as between Capstone, Parallel and Hall.

23.     On January 18, 2006, Hall attended the BLM lease sale and successfully bid upon the four (4) leases covering the four (4) tracts of land described on Exhibit 1 for a total cost of $2,517,445.50.

24.     On the day of the sale, Hall tendered four (4) checks to the BLM written on the Miller Stratvert attorney trust account in the total amount of $28,054.50, which represented for each lease the required minimum bonus of $2.00 per acre, the first-year rentals of $1.50 per acre and an administrative fee of $130.00.

25.     Pursuant to 43 CFR 3120.5-2(c), and as conspicuously stated in bold print in BLM documents provided to all bidders at the sale, including Hall, and in bold print on the form of lease bids which Hall signed and submitted to the BLM on the day of the sale, the balance of the bonus bid in the amount of $2,489,391.00 was due to be paid by Hall to the BLM no later than February 1, 2006, ten (10) working days following the sale.

26.     Pursuant to 43 CFR 3120.5-2(c), and as conspicuously stated in bold print in BLM documents provided to all bidders at the sale, including Hall, and in bold print on the form of lease bids which Hall signed and submitted to the BLM on the day of the sale, the failure to pay the amount owed to the BLM within the prescribed time period results in rejection of the bid, forfeiture of the amounts paid at the time of the sale and a loss of the leases at the bid price

obtained; in this case the four (4) leases covering the four (4) tracts of land identified on Exhibit 1.

27. On January 19, 2006, Capstone requested via email that Hall confirm the amounts of money due to Hall for the four (4) leases, including the amount paid by Hall at the time of sale and the remaining balance due. Capstone confirmed to Hall that the funds would be wire transferred to Hall.

28. On January 20, 2006, Capstone confirmed via email to Hall that Capstone had received the information Capstone requested concerning the amounts due to Hall, which included the amount paid by Hall at the sale and the remaining balance due to the BLM, and that Hall should have the wire transfer of funds in his account on that date. Capstone requested that Hall verify that the wired funds had arrived.

29. On January 20, 2006, Parallel wire transferred $2,517,445.50 into Miller Stratvert's attorney trust account to cover the total cost of the four (4) leases awarded to Hall at the BLM sale, which amount included the $28,054.50 deposit paid by Hall at the sale and the $2,489,391.00 balance due to the BLM.

30. Hall and/or his legal assistant (on information and belief Ginny L. Bell) failed to verify receipt of the wire transfer as requested by Capstone. Instead, on January 20, 2006, Hall's legal assistant verified to Capstone that a wire transfer in the amount of only $28,054.50 had been received.

31. On January 20, 2006, the four (4) checks written by Hall to the BLM on the Miller Stratvert attorney trust account in the total amount of $28,054.50 were paid from the $2,517,445.50 wire transferred by Parallel to Miller Stratvert on that date. Following the

payment of the checks, a balance in the amount of $2,489,391.00 remained in the trust account, which was due to be paid by Hall to the BLM no later than February 1, 2006 at 4:00 p.m.

32. On January 20, 2006, the Defendants knew, should have known and had actual or constructive knowledge that Parallel had deposited the subject funds into their trust account and that Parallel wire transferred the funds in reliance upon Hall's agreement to act as an agent to bid and acquire the four (4) leases on the four (4) tracts described on Exhibit 1.

33. On January 20, 2006, Defendants knew, should have known and had constructive knowledge that they had received the full amount of the funds necessary to close the sale on the four (4) leases bid by Hall and that they had only until February 1, 2006 at 4:00 p.m. to pay the balance due to the BLM.

34. Hall and/or his legal assistant failed to calendar or miscalendared or otherwise missed the deadline of February 1, 2006 to pay the balance of the bonus bid owed by Hall to the BLM and, consequently, failed to timely comply with the requirements of 43 CFR 3120.5-2(c). The failure to timely comply with the February 1st deadline resulted in rejection of the bids and forfeiture of the money paid to the BLM on the day of the sale pursuant to 43 CFR 3120.5-3(a).

35. On February 6, 2006, five (5) days after the leases had been forfeited by Hall's failure to timely pay the amounts due to the BLM, Hall sent an email to Capstone verifying for the first time that he "saw that the wire transfers came through", when, in fact, there was only one wire transfer from Parallel on January 20, 2006. This email also makes clear that Hall was not aware that the deadline to pay the balance due to the BLM had already passed.

36. Upon information and belief, the Defendants never attempted to tender the balance owed to the BLM even after Hall verified to Capstone on February 6, 2006 that the "wire transfers" from Parallel had been received.

7

37. On February 13, 2006, the BLM sent Hall a certified letter advising him of the BLM's rejection of the bids awarded to Hall on January 18, 2006 and the forfeiture of all money previously paid because Hall, as the winning bidder, failed to timely remit the balance of the bonus bid. A copy of the letter from the BLM is attached hereto as Exhibit 2.

38. Hall has admitted to interested and uninterested persons that he failed to meet the ten (10) day deadline because he thought he had thirty (30) days from the date of sale to pay the balance due to the BLM.

39. On February 17, 2006, Capstone requested that Hall wire transfer the client funds previously wired by Parallel to the Defendants for the four (4) tracts back to Parallel. Defendants sent a wire transfer of funds to Parallel on the same date in the amount of $2,489,391.00, without repaying the $28,054.50 withdrawn from Parallel's funds on January 20, 2006 to cover the checks written by Hall to the BLM and later forfeited by Defendants as described herein.

40. At the next BLM sale held on April 19, 2006, Capstone successfully reacquired the same four (4) leases on the same four (4) tracts on behalf of and for the mutual benefit of Capstone and Parallel by using the services of a third party agent other than Hall. Because competition for the leases increased subsequent to the forfeiture by Hall, the total cost for the same four (4) leases on the same four (4) tracts almost doubled to $4,996,520.50.

41. Hall's failure to timely tender the balance of the bonus bid due to the BLM on February 1, 2006 resulted in the Plaintiffs having to pay an additional $2,479,075.00 for the same four (4) leases bid by Hall in addition to the $28,054.50 forfeited by Hall's failure to pay the balance of the bonus bid on February 1, 2006, for a total loss of $2,507,129.50 in damages due to the increased cost of the leases.

42. In addition to the increased cost of the leases, Capstone and Parallel sustained economic losses of what the Plaintiffs reasonably could have expected to gain from their enterprise under the AMI Agreement had there been no forfeiture of the leases by Hall. The Plaintiffs have also incurred expenses and costs as a result of Defendants' conduct, including attorneys' fees.

43. Defendants have denied any liability to Capstone and/or Parallel for the losses they sustained and the gains that were prevented as a direct result of the failures and omissions of the Defendants as stated herein.

## COUNT I
## Breach of Contract

44. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

45. Capstone entered into an oral contract with Hall to act as an agent at the BLM sale on January 18, 2006 with the intent that Hall would bid for and acquire the four (4) tracts described on Exhibit 1 for the mutual and direct benefit of both Capstone and Parallel pursuant to the AMI Agreement.

46. Hall agreed to act as an agent at the BLM sale without asking Capstone for the identity of any parties having a direct interest in Hall's services and without limiting the benefit of the contract for his services exclusively to Capstone.

47. As a board certified specialist in oil and gas law, Hall knew or should have known that it is customary in the oil and gas industry for two (2) or more entities to form contractual relationships for the purpose of sharing the risks and costs associated with the acquisition of leases and the exploration and production of oil and gas, as Capstone and Parallel agreed to do under the AMI Agreement.

48. Hall knew or should have known that Capstone would have Parallel, or some other such entity or entities, with a direct interest and involvement in the purchase of the four (4) leases and that Hall would be acting on behalf of other expected and intended direct beneficiaries of his services as an agent.

49. On January 20, 2006, Capstone and Parallel fulfilled their contractual obligations to Defendants when Parallel sent a wire transfer of the funds due for the four (4) leases, including the amount paid by Hall at the BLM sale on January 18th and the balance owed to the BLM by Hall, as the winning bidder, no later than February 1, 2006.

50. Defendants knew or should have known no later than January 20, 2006 (if not before) that Parallel was either a client or a direct intended third party beneficiary of the services Hall agreed to provide in the transaction with the BLM.

51. On January 20, 2006, Defendants accepted Parallel's wire transfer of $2,517,445.50 and drew upon those funds $28,054.50 to cover the checks written by Hall to the BLM on the Miller Stratvert attorney trust account, thereby confirming Defendants' acceptance, intent and agreement to act as the agent for both Capstone and Parallel in the transaction with the BLM.

52. Hall never objected to acting as an agent for both Capstone and Parallel in the transaction with the BLM after Parallel wire transferred funds into the Miller Stratvert trust account on January 20, 2006 and Hall knew of Parallel's involvement. Hall failed to advise Capstone and/or Parallel that Parallel's involvement would interfere with his representation of Capstone or create a conflict of interest for Miller Stratvert. In fact, Hall's only concern was a conflict as to the acreage involved, which he confirmed was not an issue.

53. The Defendants breached their contract with Capstone and Parallel by failing to timely pay for the four (4) leases covering the four (4) tracts bid upon by Hall as the agent of Capstone and Parallel at the BLM sale.

54. Defendants are liable to both Capstone and Parallel for their losses, expectancy damages, expenses and costs resulting from Defendants' breach of contract in an amount to be proven at trial.

## COUNT II
## Legal Malpractice

55. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

56. At all times material to the Complaint, Hall's services as an agent at the BLM sale on January 18, 2006 were contracted for, and intended to benefit, the mutual interests of Capstone and Parallel under the AMI Agreement.

57. No later than January 20, 2006, Hall understood and agreed that his services as an agent were intended for the benefit of both Capstone and Parallel.

58. It was foreseeable to Defendants no later than January 20, 2006, if not before, that Parallel was acting in reliance upon Hall's contract with Capstone and that Hall's failure as the winning bidder at the BLM sale to timely comply with 43 CFR 3120.5-2(c) would harm the interests of both Capstone and Parallel.

59. As an attorney, Hall owed a duty to Capstone and Parallel to carry-out his services with the skill, prudence, and diligence of attorneys of ordinary skill and capacity. As a board certified specialist in oil and gas law, Hall owed a duty to Capstone and Parallel to exercise the same skill as other specialists of ordinary ability specializing in the same field.

60. Specifically, Hall owed a duty to Capstone and Parallel to have knowledge of the applicable federal statutes and regulations governing oil and gas lease sales, to have read the bid materials provided by the BLM and the lease bid documents signed by Hall and to otherwise perform his services in a competent and timely manner.

61. The regulation that the winning bidder at a federal lease sale must submit the balance of the bonus bid within ten (10) working days after the date of the sale was conspicuously published on BLM documents, clearly defined and known to lawyers and non-lawyers alike in this area, including especially lawyers with Hall's expertise in oil and gas law.

62. Defendants failed to calendar, miscalendared, missed the deadline, disregarded it or were not aware of the regulation governing the time required to pay the balance owed to the BLM on the four (4) leases bid by Hall.

63. Defendants' negligence of knowingly allowing Parallel's funds to sit in the Miller Stratvert attorney trust account without paying the balance due to the BLM for the four (4) leases as required by the applicable federal regulations resulted in, and was the proximate cause of, damages and losses in an amount to be proven at trial to both Capstone and Parallel, for which Defendants are liable.

64. Further, Defendants use of client funds from their attorney trust account (Parallel's wired funds) to cover the Defendants' checks and failing to properly monitor and account for client funds in their attorney trust account were breaches of their duties that resulted in harm to Plaintiffs.

65. The public policy of preventing future harm to others like Parallel requires that Defendants be prohibited from using technicalities and the "attorney-client" relationship as a shield against their clear liability by claiming that Parallel was not a client or an intended third

party beneficiary of Hall's services to which professional duties of care were owed, particularly as those duties were the same as to Parallel and Capstone and did not increase the attorneys' exposure, work or obligations or create any conflict of interests.

66. A finding of legal malpractice liability as to Capstone and Parallel against Defendants would impose no undue burden upon the legal profession under the facts and circumstances of this case.

## COUNT III
### Negligence

67. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

68. At all times material to this Complaint, Defendants and their employees owed Capstone and Parallel a duty to use reasonable care.

69. Defendants, including Hall and his legal assistant, breached their duties owed to Capstone and Parallel by failing to calendar or by miscalendaring or otherwise missing the deadline for compliance with 43 CFR 3120.5-2(c), by failing to use the funds necessary to pay the balance owed on the four (4) leases that had been wired by Parallel to Miller Stratvert on January 20, 2006, as requested, by failing to properly account for the client funds in their trust account, by using client funds from their trust account to cover checks written on the Miller Stratvert attorney trust account but not protecting their clients' interests, and by failing to timely pay the balance owed on the four (4) leases on or before February 1, 2006.

70. The acts and/or omissions of Defendants and their employees were a proximate cause of damages and losses to Capstone and Parallel in an amount to be proven at trial, for which the Defendants are liable.

## COUNT IV
### *Respondeat Superior*

71. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

72. Hall, his legal assistant and any other employee yet to be disclosed were employed by Miller Stratvert and were acting in the course and scope of their employment at all times material to this Complaint.

73. Miller Stratvert is liable to Capstone and Parallel for their damages and losses that were proximately caused by the negligence of Defendant Hall and/or his legal assistant and/or other employees pursuant to the doctrine of *Respondeat Superior*.

## COUNT V
### Indemnity

74. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

75. Capstone had the sole responsibility under the AMI Agreement with Parallel to handle the submission of bids on federal lands, either directly or through an agent.

76. Capstone hired Hall to act as an agent to submit the bids at the BLM sale on January 18, 2006 and acquire the leases therefrom.

77. Parallel has sustained losses and damages resulting from the negligent conduct of Defendants as previously described.

78. Capstone is derivatively liable to Parallel for its losses and damages in an amount to be proven at trial that are the result of the negligence of Defendants by virtue of the principal/agent relationship between Capstone and Hall.

79. In order to prevent an inequitable result, Capstone is entitled to indemnity from Defendants, by operation of law, for Capstone's liability to Parallel which resulted solely from the negligence of the Defendants as previously described and through no active fault of Capstone.

## COUNT VI
## Equitable Estoppel

80. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

81. Hall agreed to provide his services as an agent at the BLM lease sale on January 18, 2006 without advising Capstone that he could not, or would not, provide such services if parties other than Capstone had a direct interest in the leases upon which he was hired to bid.

82. Parallel reasonably relied upon Hall's agreement with Capstone when Parallel wire transferred $2,517,445.50 into Miller Stratvert's attorney trust account to cover the total cost of the four (4) leases awarded to Hall at the BLM sale.

83. Parallel's reliance on Hall's agreement with Capstone was reasonably foreseeable to Defendants no later than January 20, 2006, if not before.

84. Parallel has sustained damages and losses in an amount to be proven at trial as a result of its reliance on Hall's agreement with Capstone, for which Defendants are liable.

## COUNT VII
## Punitive Damages

85. The Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if set forth fully herein.

86. Defendants placed their own interests above the interests of both Capstone and Parallel when Defendants drew upon the funds wire transferred by Parallel into the Miller

Stratvert attorney trust account to cover checks written by Hall to the BLM and then denied having any liability for the losses and damages sustained by Plaintiffs that were proximately caused by the gross omissions and failures of the Defendants' herein described conduct.

87. Defendants have acted with malice, bad faith and gross indifference to the rights and interests of Capstone and Parallel by denying that Parallel is a client or third party beneficiary of Hall's services, denying that Defendants owed duties to Parallel in the transaction with the BLM, denying that Capstone suffered any losses and, therefore, denying any liability to either Capstone or Parallel.

88. The acts and omissions of all Defendants herein, at all times material, were willful, reckless, wanton or in bad faith, which entitles Capstone and Parallel to an award of punitive damages.

**WHEREFORE**, the Plaintiffs request judgment against the Defendants for compensatory and punitive damages as alleged herein, for pre-judgment and post-judgment interest as provided by law, for expenses, all costs of court, for reasonable attorneys' fees and for such other and further relief to which the Plaintiffs may be entitled and this Court deems proper. The Plaintiffs

The Plaintiffs hereby demand a trial by jury pursuant to Fed. R. Civ. P. Rule 38(b).

Respectfully submitted,

McCLAUGHERTY & SILVER, P.C.

By: _____/s/_____
    Joe L. McClaugherty
    Jere Kathryn Smith
    Attorneys for Plaintiffs
    Post Office Box 8680
    Santa Fe, New Mexico  87504-8680
    Telephone: 505/988-8804
    Facsimile: 505/986-9844